Jennifer M. **TRADER**, Respondent Below, Appellant,

v.

Charles C. **DARROW**, Petitioner Below, Appellee.

Supreme Court of Delaware.

Submitted: July 6, 1993.
Decided: Sept. 13, 1993.

Jay W. Eisenhofer, Wilmington, for appellant.

Charles C. Darrow, pro se.

Before MOORE, WALSH and HOLLAND, JJ.

HOLLAND, Justice:

This case involves the consolidated direct appeal from two final judgments of the Family Court.[1] The first judgment involved a December 8, 1992 dismissal (the "dismissal"), for lack of subject matter jurisdiction, of the petition of respondent-appellant, Jennifer M. Trader ("Trader"), to modify visitation pursuant to an October 3, 1991 custody order of the Circuit Court of Cecil County, Maryland (the "Maryland Order"). The second judgment involved a November 16, 1992 order holding Trader in contempt of court (the "contempt order") for refusing to permit the petitioner-appellee, Charles C. Darrow ("Darrow"), to visit the parties' daughter, pursuant to the October 8 and 15, 1992 orders of the Family Court, which reinstated visitation in accordance with the Maryland Order. This Court has concluded that both judgments should be affirmed.

### Facts

The procedural facts are not in dispute. On October 3, 1991, a consent order was entered by the Circuit Court for Cecil County, Maryland giving Trader custody of the parties' daughter[2] and giving Darrow certain visitation rights. Visitation rights were also provided for Darrow's parents ("grandfather and grandmother"). Trader now lives with the parties' daughter in Newark, Delaware. Darrow still resides in Maryland with his parents.

On August 20, 1992, Trader filed an Emergency Petition in the Delaware Family Court to cease all visitation, alleging the grandfather had sexually abused the parties' daughter. Attached to the Emergency Petition was a report from the Christiana Hospital indicating that some type of sexual abuse was suspected.[3]

On August 26, 1992, the Family Court held an Emergency Hearing on Trader's petition. Present at the hearing were

---

1. Pursuant to Supreme Court Rule 7(c), the names of the parties in the caption are pseudonyms selected by this Court.

2. At the time the Delaware litigation began at an August 26, 1992 emergency hearing in the Family Court, the parties' daughter was 3 and ½ years old.

3. Trader had previously brought the same charges in Maryland which were dismissed as unfounded.

Trader, Darrow, both grandparents, and Patricia Lee of Delaware Child Protective Services ("DCPS").[4] At the hearing, the Court was informed that there was a valid order regarding the issues of custody and visitation issued by the Circuit Court for Cecil County, Maryland.

After hearing Trader's allegations, reviewing the hospital report, and listening to Darrow's protestations, the Family Court Judge made the following ruling:

> Well, these allegations are serious enough so that at this period and for a temporary period only I am suspending the [Maryland] visitation [order].... I'm just saying that I'm basing this on what the hospital has said and what the child said to the hospital. It's too risky to risk it any further, so it won't last long and I'm sure Child Protective Services will have a recommendation of one type or the other.

On September 8, 1992, the Family Court received the report from Patricia Lee. In that report, Patricia Lee concluded, "I do not believe that [the parties' daughter] was abused by her grandfather or anyone in that family." DCPS closed the case.

Accordingly, on October 5, 1992, Darrow filed a Motion to Reinstate Visitation in accordance with the Maryland Order. The Family Court vacated its suspension of the visitation portion of the Maryland Order on October 8, 1992, and directed that the visitation arrangements under the same Maryland Order be reinstated.

Then, on October 13, 1992, Trader filed an Emergency Motion to Reconsider Reinstatement of Visitation. In the motion, Trader alleged that the DCPS report was based on insufficient investigation and information. Trader refused to allow Darrow to see the parties' daughter.[5]

The next day, Darrow filed an Emergency Petition for a Rule to Show Cause in order to have visitation with the parties'

daughter. Darrow had not seen the parties' daughter since August 26, 1992. On October 15, 1992, the Family Court issued another order, again granting Darrow's request to reinstate visitation pursuant to the Maryland Order.

Darrow filed a second Rule to Show Cause on October 19, 1992, because Trader still would not permit him to visit the parties' daughter. On the same day, Trader filed a Motion to Take Discovery from DCPS, Maryland Child Protective Services, New Castle County Police, and the various medical institutions from which the parties' daughter had received care. On October 28, 1992, the Family Court granted Trader leave to take discovery.

The Family Court held a hearing on November 16, 1992, on Darrow's Rule to Show Cause. At this hearing, the Family Court held Trader in contempt for refusing to obey its prior orders reinstating the Maryland Order.

On December 8, 1992, the Family Court issued an opinion on Darrow's motion to dismiss the Delaware proceedings entirely. The court ruled that under the Uniform Child Custody Jurisdiction Act ("UCCJA"), 13 *Del.C.* § 1903(3)(b), it had only temporary emergency jurisdiction. The Family Court granted Darrow's motion to dismiss, holding that Maryland had continuing jurisdiction pursuant to the Maryland Order.

### Uniform Child Custody Jurisdiction Emergency Proceedings

Trader's first challenge relates to the Family Court's judgment granting Darrow's motion to dismiss the Delaware proceedings. Delaware has adopted the UCCJA, which is codified at 13 *Del.C.* §§ 1901–1925. The general purposes of the UCCJA are stated as follows:

> (a) The general purposes of this chapter are to:

---

**4.** At the hearing, Patricia Lee stated that she had only just seen the medical reports, and that she had just met the parties for the first time. She further stated that she was not yet able to take a position on the matter and was presently trying to set a date to interview the parties' child.

**5.** Even when the police accompanied Darrow to Trader's home, she refused to allow the parties' daughter to leave with Darrow.

(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on the well-being of such children;

(2) Promote cooperation with the courts of other states to the end that a custody decree will be rendered in that state which can best decide the case in the interest of the child;

(3) Assure that litigation concerning the custody of the child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available, and that the courts of this State decline the exercise of jurisdiction when the child and his family have a closer connection with another state which has enacted the Uniform Child Custody Jurisdiction Act;

(4) Discourage continuing controversies over child custody in the interests of greater stability of home environment and of secure family relationships for the child;

(5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(6) Avoid the relitigation of custody decisions of other states in this State insofar as it is feasible;

(7) Facilitate the enforcement of custody decrees of other states;

(8) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this State and those of other states concerned with the same child; and

(9) Make uniform the law of those states which enact child custody jurisdiction legislation.

(b) This chapter shall be construed to promote the general purposes stated in this section.

13 *Del.C.* § 1901.

The relevant portion of the UCCJA, which applies to this case, is Section 1914(a)(1). This section provides that when there is a valid custody decree made by one state, a second state may not modify that decree unless

[i]t appears to the [Family Court] that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter, or has declined to assume jurisdiction to modify the decree....

13 *Del.C.* § 1914(a)(1).

Professor Bodenheimer, reporter for the special committee which drafted the Uniform Act, stated regarding Section 14(1) of the UCCJA (Section 78–45c–14(1)):

[T]he continuing jurisdiction of the prior court is exclusive. Other states do not have jurisdiction to modify the decree. They must respect and defer to the prior state's continuing jurisdiction. Section 14 is the key provision which carries out the Act's two objectives of (1) preventing the harm done to children by shifting them from state to state to relitigate custody, and (2) preventing jurisdictional conflict between the states after a custody decree has been rendered....

Exclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and where one parent or another contestant continues to reside. *Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required.*

*State in Interest of D.S.K.*, Utah App., 792 P.2d 118, 124 (1990) (quoting Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA*, 14 Fam.L.Q. 203, 214–15 (1981), *quoted in Kumar v. Superior Court*, Cal. Supr., 652 P.2d 1003, 1007 (1982) (emphasis added)). *See also In Interest of Shockley*, Del.Fam., 611 A.2d 508 (1992); *Curtis v.*

*Curtis,* Miss.Supr., 574 So.2d 24 (1990); *Schoeberlein v. Rohlfing,* Minn.App., 383 N.W.2d 386 (1986).

■ Therefore, when another state has issued a valid outstanding custody order, the order shall not be modified by Delaware unless that state has lost its jurisdiction or refuses to exercise its jurisdiction over the custody dispute. Because Darrow still resides in Maryland, the Maryland Order must control, and Maryland retains exclusive continuing jurisdiction over the matter. The only exception to this rule is for limited emergency jurisdiction. Section 1903 of Title 13 states:

> A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
>
> (3) The child is physically present in this State and:
>
> b. It is necessary in an emergency to protect the child because he has been subjected or threatened with mistreatment or abuse....

13 *Del.C.* § 1903.

■ Although there does not appear to be any Delaware case law concerning emergency jurisdiction, many states have construed the above language to mean that a state court, other than one in the state having continuing jurisdiction under an original custody order, may obtain temporary jurisdiction in an emergency situation. *State in Interest of D.S.K.,* 792 P.2d at 126–28; *Curtis v. Curtis,* 574 So.2d at 28; *Schoeberlein v. Rohlfing,* 383 N.W.2d at 388–89.

In order to obtain emergency jurisdiction, the Family Court must make a finding that an extraordinary situation exists. A situation is extraordinary when there is an immediate and imminent threat that the child will be subjected to abuse or neglect if temporary jurisdiction, in the form of a stay of the outstanding order, is not exercised. 13 *Del.C.* § 1903(3)(b).

Commenting on the scope of jurisdiction that a court should exercise in an emergency, Professor Bodenheimer states:

> [T]his special power to take protective measures does not encompass jurisdiction to make permanent custody determinations or to modify the custody decree of a court with continuing jurisdiction. Emergency jurisdiction confers authority to make temporary orders, including temporary custody for a limited period of time, pending proceedings in the state with regular jurisdiction under the [UCCJA].

Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA,* 14 Fam.L.Q. at 225–26. *See State in Interest of D.S.K.,* 792 P.2d at 126–27.

■ In the hearing preceding the August 26 order, where the Delaware Family Court stayed the Maryland Order, the trial judge stated:

> [T]hese allegations are serious enough so that at this period and for a temporary period only I am suspending the visitation.... I'm basing this on what the hospital [report] has said and what the child said to the hospital.

This statement suggests that the Delaware Family Court Judge proceeded in accordance with the UCCJA's emergency temporary jurisdictional provisions. 13 *Del.C.* § 1903(3)(b).

■ Emergency jurisdiction in the UCCJA confers authority to make only temporary orders, pending proceedings in the state with regular jurisdiction under the UCCJA. *State in Interest of D.S.K.,* 792 P.2d at 126–27; Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA,* 14 Fam.L.Q. at 225–26. Emergency jurisdiction is clearly circumscribed. Therefore, the Family Court could take only interim protective measures with respect to the parties' daughter, and could not usurp the jurisdiction of the Maryland courts. *Benda v. Benda,* App.Div., 236 N.J.Super. 365, 565 A.2d 1121, 1124 (1989).

> [E]xercise of jurisdiction under the "abandonment" and "emergency" provision of the U.C.C.J.A. does not take on the same characteristics or implications as the exercise of jurisdiction under the

other provisions of the act. Assumption of emergency jurisdiction is an assumption of temporary jurisdiction only; it is meant solely to prevent irreparable and immediate harm to children and, absent satisfaction of other U.C.C.J.A. jurisdictional prerequisites, does not confer upon the state exercising emergency jurisdiction the authority to make a permanent custody deposition [sic] [disposition].

*Id.* (quoting *Hache v. Riley*, N.J.Super. Ch. Div., 451 A.2d 971, 975 (1982)). *See State in Interest of D.S.K.*, 792 P.2d at 126–27.

■ The Family Court's dismissal of the case *sub judice* was required under the provisions of the UCCJA. The special power to take protective measures, provided by the emergency provision of the act, does not encompass jurisdiction to make permanent custody determinations or to modify the custody decree of a court with continuing jurisdiction. The Maryland courts had continuing jurisdiction and, in fact, at the time of the dismissal, a modification action was pending in the Maryland court. Therefore, we hold that the ultimate dismissal by the Delaware Family Court was mandated by the UCCJA. 13 *Del.C.* §§ 1901–1914.

### Uniform Child Custody Jurisdiction Enforcement Proceedings

In addition to appealing the Family Court's December 8, 1992 dismissal, Trader appeals from the Family Court's November 16, 1992 judgment, which held her in contempt for refusing to permit Darrow to visit the parties' child, pursuant to October 8 and 15, 1992 orders of the Family Court reinstating visitation in accordance with the Maryland Order.

■ The UCCJA, as codified at 13 *Del.C.* § 1913, requires Delaware to "recognize *and enforce* an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with the [UCCJA]. . . ." (emphasis added). The record reflects that on October 8, 1992, the

Family Court vacated the suspension of the Maryland Order and reinstated visitation. Trader still refused to allow Darrow to see the parties' daughter. Even when the police accompanied Darrow to Trader's home, she refused to allow the parties' daughter to leave with him. On October 14, 1992, Darrow filed an Emergency Petition for a Rule to Show Cause in order to have visitation.

The Family Court issued another order on October 15, 1992, reinstating visitation in accordance with the Maryland Order. On October 19, 1992, Darrow filed a second Rule to Show Cause because Trader still would not allow Darrow to visit the parties' daughter. The Family Court held a hearing on Darrow's Rule to Show Cause on November 16, 1992. At that hearing, the Family Court held Trader in contempt for refusing to obey its prior orders reinstating the Maryland Order.[6]

Once the Delaware Family Court determined that Maryland had continuing jurisdiction, Delaware was divested of any power that it may have had pursuant to the emergency provisions of the UCCJA. The UCCJA *required* Delaware to enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions in accordance with the UCCJA. 13 *Del.C.* § 1914.

The Family Court had the authority to respond to Darrow's motion to have the Maryland Order enforced in Delaware. Trader's repeated refusals to comply with the Delaware Family Court's October 8 and 15 orders, which vacated its suspension of the Maryland Order and reinstated Darrow's visitation rights, properly resulted in Trader being held in contempt of the Delaware Family Court.

### Conclusion

The judgments of the Family Court are **AFFIRMED.**

---

**6.** The Family Court's evidentiary rulings were consistent with the law of the case established

in its prior proceedings between the parties.