2000 Utah Ct. App. 182

**STATE of Utah, in the interest of A.M.S. and A.S., persons under eighteen years of age.**

**K.P.S., Appellant,**

v.

**State of Utah, Appellee.**

**No. 990452–CA.**

Court of Appeals of Utah.

June 15, 2000.

Terry L. Cathcart and Ross E. McPhail, Bountiful, for Appellant.

Jan Graham, Attorney General and John Peterson, Attorney General's Office, Salt Lake City, for Appellee.

Jan W. Arrington, Layton, and Martha Pierce, Salt Lake City, Guardians Ad Litem.

Before JACKSON, Associate P.J., and BENCH and DAVIS, JJ.

## OPINION

DAVIS, Judge:

¶ 1 K.P.S. (Father), the father of the two minor children at issue, A.M.S., the eldest and a girl, and A.S., a boy, appeals the trial court's order granting custody to the children's maternal grandparents. We affirm, but modify in part the court's order.

## BACKGROUND

¶ 2 Although they never married, Father and K.V. (Mother) are the parents of A.M.S. and A.S. Issues of custody and child support were initially resolved through a paternity action in Arizona, where Father and Mother then lived, through orders of the Superior Court of Arizona, Maricopa County.

¶ 3 On December 31, 1997, Mother suffered a debilitating stroke and entered into a coma. As a result, Father and the children's maternal grandparents, with whom the children were living in Utah, filed petitions for temporary custody with the Arizona court. The court awarded temporary custody to Father and ordered the maternal grandparents to turn over the children on June 5, 1998.

¶ 4 As the deadline for turning over the children drew near, A.M.S. experienced stomach problems and stress related to concerns about living with Father. She indicated generally to her therapist that she had been sexually violated by Father and later disclosed to a physician and nurse that Father "stuck his private parts against me and said if I told anyone he would kill my Mom and he threatened me." When Father arrived from Arizona to receive custody of the children, the Division of Child and Family Services (DCFS) informed him of medical findings that indicated A.M.S. had been sexually abused and Father agreed that the children would remain with the maternal grandparents pending completion of the investigation. A.M.S. was subsequently examined at Children's Justice Center by another physician and nurse who concluded A.M.S. had been sexually abused. Allegations of Father's sexual abuse had previously been made in Arizona but were unsubstantiated. In addition, A.S. remembered instances of

physical abuse, including being hung on a hook on a wall by Father, and both children recounted seeing Father physically abuse mother and were afraid they would be hurt if they returned to Father.

¶ 5 Upon Father's return to Arizona, he moved for an order to show cause why the maternal grandparents had not complied with the temporary custody order. Meanwhile, DCFS filed a verified petition in Utah seeking an adjudication that the children were abused or neglected and thus within the juvenile court's jurisdiction, and requesting an order that, among other things, awarded temporary custody of the children to their maternal grandparents. In turn, Father moved to transfer jurisdiction over the Utah proceedings to Arizona, arguing the same was required under the Uniform Child Custody Jurisdiction Act (UCCJA), *see* Utah Code Ann. §§ 78–45c–1 to –26 (1996),[1] as a modification of the Arizona custody order.

¶ 6 The juvenile court conducted a telephone conference with the Arizona court regarding jurisdiction. Both courts agreed that entry of the Utah juvenile court's temporary order was an appropriate exercise of emergency jurisdiction under the UCCJA to prevent abuse of the children. The Utah court further concluded that because the verified petition was brought by DCFS "as a child protection matter and is not a true motion to alter or amend the custody rights of [Father]," the verified petition was not "a custody modification matter covered by the UCCJA." Accordingly, it denied Father's motion to transfer jurisdiction. The Arizona court, however, declined to defer jurisdiction to the State of Utah, opting instead to stay its proceedings until the Utah proceedings were complete.

¶ 7 The Utah court held a pretrial hearing pursuant to which it directed the parties to exchange lists of witnesses they intended to call at trial, scheduled for March 3–5, 1999. In both its initial list of witnesses and its amended list—filed approximately three weeks before trial—DCFS omitted any reference to D.V., Mother's husband and the children's stepfather. Nonetheless, on the first day of trial when the court directed DCFS to present its first witness, DCFS indicated it wanted to call D.V. notwithstanding his omission from the witness lists, acknowledging the omission occurred because counsel "just plain overlooked him." Over Father's objection for lack of notice and untimeliness that deprived Father of the ability to investigate D.V.'s credibility and otherwise prepare for cross-examination, the court permitted D.V. to testify.

¶ 8 On the second day of trial, the Guardian Ad Litem for the children indicated she would call the children to testify and asked that Father be excluded during this time. The Guardian asserted that exclusion was permitted under Rule 50(b) of the Utah Rules of Juvenile Procedure because the children were fearful of Father. Father objected, arguing the motion to exclude him was untimely and that he had a right to be present during the testimony. The court, however, found that the children "are young, testimony came in indicating that they are currently nine and seven years of age. There was a great deal of testimony, both from the therapist and from other fact witnesses yesterday regarding fear and anxiety they have of the father." Consequently, the court granted the Guardian's request, but accommodated Father by allowing him to sit in the hallway just outside the courtroom where he could listen to the testimony. Although Father requested to view the children's testimony via closed circuit television, the court explained it did not have the required equipment. Thus, although he objected, Father accepted the court's accommodation. Father's counsel remained in the courtroom.

¶ 9 After trial, the court found by clear and convincing evidence that based on various facts, including that the children were fearful

---

1. We acknowledge the Utah Legislature recently repealed and reenacted the UCCJA effective July 1, 2000, and in so doing overruled this court's holding in *In re R.N.J.*, 908 P.2d 345, 348–49 (Utah Ct.App.1995), that the UCCJA does not apply to proceedings to terminate parental rights. *See* 2000 Senate Bill 104, § 2 (stating that the term " 'child custody proceeding' ... includes a proceeding for ... termination of parental rights"). Nonetheless, because those changes are inapplicable and would not alter our analysis here, we cite to the provisions in effect at the relevant times.

of returning to Father and that such fears are based in reality; medical findings corroborated A.M.S.'s claim that she had been sexually abused; and A.M.S.'s injuries occurred during the time when she had extended visits with Father, Father had sexually abused A.M.S. The court further found by clear·and convincing evidence· that both children witnessed Father's physical abuse· of· Mother and they themselves had suffered severe physical abuse by Father. .Consequèntly, the court determined the children were within the juvenile court's jurisdiction, A.M.S. was an abused child, and both A:M.S. and A.S. were neglected. The court ordered that the maternal grandparents retain custody of the children and Father be allowed only supervised visitation. The court further ordered that it would defer to the Arizona court for the appropriate amount of child support Father should pay to the maternal grandparents. Father appeals.

### ISSUES

¶ 10 Father raises the following grounds for reversal: (1) because the Utah court was without jurisdiction to entertain the matter under the UCCJA, it erred in denying his motion to transfer the matter to the Arizona court; (2) the court erred ·in allowing D.V. to testify when DCFS failed to include· D.V. in its witness list; and (3) the court erred in excluding Father from the· courtroom during the children's testimony.

### ANALYSIS

#### Jurisdiction under the UCCJA

¶ 11 We first review the trial court's determination regarding its jurisdiction under the UCCJA. Because the competency of the juvenile court to decide the case raises a' question as to the court's subject matter jurisdiction, it presents a question of law we review for correctness. *See In re D.S.K.,* 792 P.2d 118, 123 (Utah Ct.App.1990).

¶ 12 On appeal, DCFS concedes the trial court erred in concluding the UCCJA was inapplicable merely because the verified petition was filed by DCFS. The UCCJA expressly provides that a custody proceeding to which it applies "includes child neglect and

dependency proceedings." Utah Code Ann. § 78–45c–2(3) (1996); *see also In re D.S.K.,* 792 P.2d at 123 ("By claiming it retained jurisdiction over the neglect allegations, the juvenile court granted permanent custody to father and thereby clearly modified the custody decree entered in Florida.").

¶ 13 Under the UCCJA, because the Arizona court made the initial custody determination when all parties resided in Arizona and Father continues to so reside, a Utah court generally may not modify that determination. *See* Utah Code Ann. § 78–45c–14(1) (1996); *Liska v. Liska,* 902 P.2d 644, 647 (Utah Ct.App.1995) (stating that the decree state continues to have jurisdiction when father continues to reside there and have visitation contact with children and "[t]he continuing jurisdiction of the court in which the decree originated is intended to remain exclusive"); *Crump v. Crump,* 821 P.2d 1172, 1177 (Utah Ct.App.1991) (holding that jurisdiction did not shift to Utah from Montana when mother· and children moved· there because father remained in Montana); *In re D.S.K.,* 792 P.2d at 124 (" 'The jurisdiction of state A continues and is exclusive as long as the husband lives in state A . . . .' ") (citation omitted; emphasis omitted). Hence, Father is correct that ordinarily the maternal grandparents should have brought their request for custody and the evidence· of abuse on which it was based to the Arizona court.

¶ 14 Nonetheless, under section 78–45c–3(1)(c) a Utah court may make a temporary custody determination if the child is present in Utah and "it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent." Utah Code Ann. § 78–45c–3(1)(c) (1996). As this court explained, emergency jurisdiction " 'is reserved for extraordinary circumstances' " and "should be limited to those cases of neglect where the harm is immediate or imminent." *In re D.S.K.,* 792 P.2d at 126–27 (citation omitted). Father argues that the only emergency here was based on the imminent transfer of custody. While he may be correct that this alone cannot support the exercise of emergency jurisdiction, the imminent transfer coupled

with the court's factual findings that by clear and convincing evidence the children had been physically and sexually abused—which findings Father does not challenge on appeal—was sufficient under section 78–45c–3(1)(c). Accordingly, we conclude that the court could properly enter a temporary order granting custody of the children to the maternal grandparents.

¶ 15 However, the court erred in the scope of its order. Emergency jurisdiction is limited to measures necessary to protect the children and, hence, section 78–45c–3(1)(c) of the Utah Code does not empower the court "to make a permanent custody disposition." *In re D.S.K.*, 792 P.2d at 127. Rather, orders entered through the court's emergency jurisdiction are temporary in nature and have effect only pending adjudication of the issues in the decree state. *See id.* Accordingly, we herewith modify paragraphs one and three of the trial court's order to the effect that the orders contained therein are temporary only pending further order of the Arizona court in the modification and such other proceedings as may be brought therein by the parties. To the extent the orders of the trial court herein purport to exercise anything other than temporary, emergency jurisdiction, the same are reversed.

### Admission of D.V.'s Testimony

¶ 16 We now turn to Father's claim that the court should have excluded the testimony of D.V. because DCFS failed to designate him as a witness before trial. The court has broad discretion in determining whether to allow a witness to testify and this court will not reverse such ruling unless it abused that discretion, substantially affecting Father's rights. *See* Utah R. Evid. 103(a); *Gerbich v. Numed Inc.*, 1999 UT 37, ¶ 16, 977 P.2d 1205.

¶ 17 First, although Father is correct that the court could have excluded D.V.'s testimony because DCFS failed to comply with the court's order on witness disclosure, *see Rehn v. Rehn*, 1999 UT App. 041, ¶ 26, 974 P.2d 306, he simply fails to show that such sanction was required here. Moreover, because "[e]xcluding a witness from testifying is ... 'extreme in nature and ... should be employed only with caution and restraint,'" *Berrett v. Denver & Rio Grande W. R.R. Co.*, 830 P.2d 291, 293 (Utah Ct.App. 1992) (citation omitted; omission in original), we conclude the court did not abuse its discretion.

¶ 18 Second, even if the court somehow abused its discretion by allowing D.V. to testify, Father has not shown prejudice by the ruling. Father's sole claim of prejudice is that D.V.'s testimony contained hearsay that was "inflammatory" and "susceptibil[e] to embellishment." However, Father was still free to object to those parts of D.V.'s testimony that were inadmissible. Hence, any admission of hearsay flowed not from the denial of Father's requested sanction from which he now appeals, but from his failure to make proper objections. Father also fails to allege what, if anything, he would have done differently had D.V. been designated. Accordingly, we reject Father's attempt to predicate reversal on these grounds.

### Exclusion from Courtroom During Testimony

¶ 19 Finally, Father asserts this court should reverse because he was excluded from the courtroom during the children's testimony and thus was able to participate only by listening from the hallway. Father argues that his exclusion was not authorized by Utah Rule of Juvenile Procedure 50. While Father may be correct that the court failed to strictly comply with Rule 50, he overlooks that the juvenile court has broad discretion to control its proceedings. *See* Utah Code Ann. § 78–7–5 (1996) ("Every court has authority to ... (3) provide for the orderly conduct of proceedings before it or its officers; [and] ... (5) control in furtherance of justice the conduct of ... all other persons in any manner connected with a judicial proceeding before it in every matter ...."); *cf. Berrett*, 830 P.2d at 293 ("Trial courts have broad discretion in managing the cases assigned to their courts [and w]e will not interfere with a trial court's case management unless its actions amount to an abuse of discretion.") (citation omitted).

¶ 20 Here, Father concedes that the Sixth Amendment right to confrontation does not apply and has otherwise failed to cite any authority requiring reversal for his exclusion from the courtroom during the children's testimony. Given that based on the court's finding that the children feared Father and there was a possibility that Father's presence could have inhibited the children's ability to testify, Father has not persuaded us that the court abused its discretion. Indeed, the court appears to have struck an appropriate balance by allowing Father's substantial participation through his counsel remaining in the courtroom and questioning the witnesses and Father listening from the hallway. Consequently, we reject Father's argument for reversal on this basis.

### CONCLUSION

¶ 21 We conclude that the court correctly determined that it could hear this matter under the emergency jurisdiction provision of the UCCJA. Nonetheless, because the court's authority under the UCCJA is limited to temporary orders, we modify the order here such that it has effect only pending final resolution by the Arizona court. Further, we conclude the court did not abuse its discretion in allowing D.V. to testify or by requiring Father to listen to the children's testimony from the hallway outside the courtroom.

¶ 22 Affirmed and modified.[2]

¶ 23 WE CONCUR: NORMAN H. JACKSON, Associate Presiding Judge, and RUSSELL W. BENCH, Judge.

---

2.  We reject Father's request for attorney fees and costs incurred below and on appeal because he made the request for the first time during oral argument. *See Utah Med. Prods. Inc. v. Searcy,* 958 P.2d 228, 233–34 (Utah 1998) ("[T]he issue of attorney fees is not properly before this court because it was raised for the first time on appeal."); *Larson v. Overland Thrift & Loan,* 818 P.2d 1316, 1321 n. 5 (Utah Ct.App.1991) (declining to consider issue of attorney fees when raised for first time in reply brief).