**In the Interest of Caroline T. SHOCK-LEY, Born March 21, 1982, and Wayne L. Shockley, Born September 1, 1984.**

Family Court of Delaware,
Sussex County.

Decided: Jan. 23, 1992.

Benjamin F. Shaw, III, Georgetown, for petitioner.

Clayton E. Bunting, Georgetown, for respondent.

MILLMAN, Judge.

This case comes to the Court by a petition filed by Wayne L. Shockley [1] ("father") against Caroline T. Richards ("mother") which requires mother to show cause why she should not be held in contempt of a visitation order entered by this Court on April 7, 1989. The April 7, 1989 order was entered in anticipation of mother and the parties' two children moving to the State of Wisconsin. Mother has filed a motion to dismiss the rule to show cause contending: 1) Delaware should not assume jurisdiction of this matter because it does not meet the jurisdictional requirements of 13 *Del.C.* § 1903 (§ 3, Uniform Child Custody Jurisdiction Act—"UCCJA"); 2) that assuming Delaware does meet the requirements of § 1903, then jurisdiction should be declined

---

**1.** A pseudonym is adopted to protect the confidentiality of the parties pursuant to Del. Supr.Ct.Rule 7(c).

on the basis of *forum non conveniens* under 13 *Del.C.* § 1907 (§ 7, UCCJA); and 3) Delaware should not assume jurisdiction because to do so would contravene the purpose and intent of Delaware's Uniform Child Custody Act, 13 *Del.C.* § 1901 *et seq.* (§ 1, UCCJA).

## I

The parties were married on December 4, 1979, and divorced by a decree of this Court on December 21, 1987. Two children, who are the subject of this action, were born to the parties during the marriage. On May 15, 1987, the parties entered into a consent order in this Court which granted them joint legal custody of the children with physical placement with mother. Father was given "liberal visitation as agreed upon by the parties...." On December 7, 1987, the visitation portion of the May 15, 1987 order was modified by consent of the parties to provide a more definite visitation schedule for father.

At a hearing on March 26, 1990, this Court entered a finding of contempt against mother for, among other reasons, her failure to permit telephone contact by father with the children as required under the April 7, 1989 order. Although mother did not appear at the March 26, 1990 hearing, by correspondence she contended this Court was without jurisdiction to hear the contempt proceeding because the children had resided in Wisconsin for more than six months. This Court found her contention to be without merit.

Subsequent to father filing this present action, mother filed a petition in the Circuit Court of Rock County, Wisconsin, to modify the April 7, 1989 Delaware visitation order. Based on allegations of improper conduct by father with the children, the Circuit Court on July 10, 1990, entered an order prohibiting father from having any physical contact with the children. On July 27, 1990, the Circuit Court rescinded its injunction after learning that this court was aware of the allegations of improper conduct by father and that Delaware authorities were investigating the allegations since it was alleged the improper conduct

occurred in Delaware. The petition to modify visitation pending in the Circuit Court is being held in abeyance by that court pending this Court's decision on jurisdiction.

Subsequent to the filing of this contempt petition, father filed a petition for modification of custody in this Court. While this opinion deals directly with the contempt petition, the Court, in the interest of judicial economy, has reviewed the applicable statutes and case law concerning issues of custody and visitation modification because of mother and father's pending petitions which seek such changes. While the factual record is not as complete as it could be, I am satisfied the record is sufficient for a decision on whether this court should also decide the jurisdictional issue of father's custody modification petition. Accordingly, the jurisdiction of the Court to hear the contempt petition will be addressed as well as the jurisdictional issue regarding father's modification of custody petition.

## II

The issues presented here are whether this Court has subject matter jurisdiction to impose sanctions for an alleged violation of this Court's order and to determine if this Court should exercise jurisdiction to decide father's petition for custody modification.

The UCCJA was promulgated to:

(1) avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(2) promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(3) assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state

decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

(4) discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

(5) deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(6) avoid re-litigation of custody decisions of other states in this state insofar as feasible;

(7) facilitate the enforcement of custody decrees of other states;

(8) promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and

(9) make uniform the law of those states which enact it.

See, § 1, UCCJA, and 13 Del.C. § 1901. Professor Brigette M. Bodenheimer, Reporter for the UCCJA, has written extensively on this Act. Professor Bodenheimer has described the legal background of the UCCJA and the reasoning for its promulgation:

Under state law preceding the Uniform Act, courts have the power to modify their own custody decrees. They retain continuing jurisdiction to change their custody or visitation provisions, if circumstances have changed, or, under some laws, if the existing custody arrangement presents a danger to the child. This jurisdiction continues when the child is absent from the state.

Prior to the Uniform Act, the Courts of other states often assumed concurrent jurisdiction to modify a custody decree, if the child happened to be in their territory, without regard to the pre-existing and continuing jurisdiction of the state of the original decree.... [C]oncurrent jurisdiction in several states to modify an existing custody judgment was a major cause of parental resort to kidnapping to gain a more favorable judgment in a new forum. The exercise of concurrent jurisdiction frequently resulted in collisions between the Courts of different states which made contradictory custody awards.

Some Courts in a new state would express their readiness to recognize the custody decree of the state of continuing jurisdiction as a matter of comity, if not full faith and credit, but in the same breath, they would often take the position that circumstances had changed since the entry of the other state's decree, so that the transfer of custody to the other parent was warranted.

Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA*, 14 Fam.L.Q. 203, 213–14 (1981). (Footnotes omitted.)

The Act was clearly promulgated to resolve the issues presented here.

Mother first argues that this Court does not meet the jurisdictional bases of 13 Del.C. § 1903.[2] Section 3 of the UCCJA

---

2. **Title 13, Del.C., § 1903. Jurisdiction.**

A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This State:
  a. Is the home state of the child at the time of the commencement of the proceeding; or
  b. Had been the child's home state within 6 months before commencement of the proceedings and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or
(2) It is in the best interests of the child that a court of this State assume jurisdiction because:

a. The child and his parents, or the child and at least 1 contestant, have a significant connection with this State; and
  b. There is available in this State substantial evidence concerning the child's present or future care, protection, training and personal relationships; or
(3) The child is physically present in this State and:
  a. The child has been abandoned; or
  b. It is necessary in an emergency to protect the child because he has been subjected or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
(4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivisions (1), (2) and (3) of this section, or another state has declined to

(codified as § 1903) is the basic grant of jurisdiction for an initial custody determination. But this statute is limited in its scope by other relevant statutes. Section 14 (codified as § 1914) prohibits another state from modifying the decree of the first state if the first state continues to meet the jurisdictional requirements of the Act and has not declined to continue asserting jurisdiction. Mother's argument makes no distinction between the requirements for jurisdiction for an initial order and a modification of an existing order. If such a position is accepted, § 1914 would have no purpose. Professor Bodenheimer contends § 1914 was promulgated to set forth the bases for when the first state loses its continuing jurisdiction and *not* how it regains jurisdiction.

The UCCJA was designed 'to bring some semblance of order into the existing chaos.' In order to do so, the Act had to go further than simply codifying the principle of recognition of out-of-state custody decrees. It had to strengthen the continuing jurisdiction of the state of the initial decree; it had to insulate that jurisdiction from out-of-state interference; in other words, it had to bestow legal effect upon that continuing jurisdiction which operates beyond the state borders.

Accordingly, Section 14 of the UCCJA provides that 'once a court of another state has made a custody decree, a court of this state shall not modify that decree.' In other words, the continuing jurisdiction of the prior court is exclusive. Other states do not have jurisdiction to modify the decree. They must respect and defer to the prior state's continuing jurisdiction. Section 14 is the key provision which carries out the Act's two objectives of (1) preventing the harm done to children by shifting them from state to state to relitigate custody, and (2) preventing jurisdictional conflict be-

tween the states after a custody decree has been rendered. . . .

Exclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and where one parent or another contestant continues to reside. *Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required.*

Bodenheimer at 214–215 (emphasis added).

Contrary to mother's position, Professor Bodenheimer states, "the rules governing modification jurisdiction are markedly different from the rules applicable to initial jurisdiction." *Id.* at 215. *See, also, Yurgel v. Yurgel,* Fla.Supr.Ct., 572 So.2d 1327 (1990); *Harris v. Melnick,* App., 314 Md. 539, 552 A.2d 38 (1989); *State In Interest of D.S.K.,* Utah Ct. of App., 792 P.2d 118 (1990). Professor Bodenheimer states:

Modification jurisdiction, on the other hand, is governed primarily by Section 14, reinforced, where necessary, by the stronger clean hands rule of Section 8(b). As the Commissioners' Note to Section 6 states, 'once a custody decree has been rendered in one state, jurisdiction is determined by Sections 8 and 14.' This means that only one state—the state of continuing jurisdiction—has power to modify the custody decree. Only that state decides whether to decline the exercise of its jurisdiction in any particular case. The rule is clear and simple. There can be no concurrent jurisdiction and no jurisdictional conflict between two states.

*Id.* at 216.

Professor Bodenheimer described a case remarkably similar to the case at bar.

exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and it is in the best interests of the child that this court assume jurisdiction.

Except as otherwise specifically stated in this section, the physical presence in this State of the

child, or of the child and 1 of the contestants, is not alone sufficient to confer jurisdiction on a court of this State to make a child custody determination. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody. (60 Del.Laws, c. 368, § 1.)

A typical example is the case of the couple who are divorced in state A, their matrimonial home state, and whose children are awarded to the wife, subject to visitation rights of the husband. Wife and children move to state B, with or without permission of the court to remove the children. State A has continuing jurisdiction and the courts in state B may not hear the wife's petition to make her the sole custodian, eliminate visitation rights, or make any other modification of the decree, even though state B has in the meantime become the 'home state' under section 3. The jurisdiction of state A continues and is exclusive as long as the husband lives in state A unless he loses contact with the children, for example, by not using his visitation privileges for three years.

Bodenheimer: *Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws,* 22 Vand.L.Rev. 1207, 1237 (1969).

■ In determining jurisdiction in custody matters, one must also consider the part any pertinent federal legislation may play. In 1980, Congress passed the Parental Kidnapping Prevention Act (the "PKPA"). Congress was aware of the growing number of custody disputes between courts in different states and it was desirous of ending those interstate disputes while developing, among other things, legislation to assist in promoting cooperation among the states in resolving these jurisdictional disputes with the best interests of children being paramount in the decisions. *Congressional Findings and Declaration of Purposes for Parental Kidnapping Prevention Act of 1980,* Pub.L. 96–611. The PKPA states:

(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

28 U.S.C.A. § 1738A(d). Subsection (c)(1) states:

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

\* \* \* \* \* \*

(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

28 U.S.C.A. § 1738A(c)(1). Subsection (d) states in unambiguous language that the state which enters the original order has continuing jurisdiction as long as that state remains the residence of the child *or any contestant.* Emphasis added. *Yurgel v. Yurgel,* 572 So.2d at 1332–1333. *State In Interest of D.S.K.,* 792 P.2d at 128–129. I am satisfied that mother's contention that this court does not meet the jurisdictional requirements of section 1903 is an incorrect application of that section to the case at bar. It is not questioned that this court had subject matter jurisdiction at the time the April 7, 1989 order was entered and that father remains a resident of this state. It is also undisputed that this Court has not declined to assume continuing jurisdiction. *See,* 13 *Del.C.* § 1914.

Moreover, the PKPA resolves any doubt as to this Court's continuing jurisdiction that the UCCJA may leave unresolved. "Under the supremacy clause of the Constitution, the PKPA supersedes any and all inconsistent state laws." *Yurgel v. Yurgel,* 572 So.2d at 1329 citing *Thompson v. Thompson,* 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988). The language of § 1738A(d) of the PKPA is plain and unambiguous. Where this Court had initial valid subject matter jurisdiction which was exercised and one contestant continues to reside in this state, then this Court has continuing jurisdiction. Accordingly, mother's contention that this Court is without subject matter jurisdiction under 13 *Del.C.* § 1903 is without merit.

### III

■ Assuming that Delaware has continuing jurisdiction, mother next contends

that Delaware and Wisconsin share concurrent jurisdiction and a finding of *forum non conveniens* by this Court is required. Professor Bodenheimer has addressed the "myth of concurrent modification jurisdiction." She states:

Some decisions proceed on the erroneous assumption that both the state of the original decree and the state where the child subsequently resides for six months have jurisdiction to modify the original decree. They say that there is 'significant connection' jurisdiction in the state of the original decree and concurrent 'home state' jurisdiction in the new state.

This 'concurrent jurisdiction' theory is incompatible with the clear language of the Act. Section 14 is unambiguous: if the state of the original decree has jurisdiction, a court of another state 'shall not modify that decree.' In other words, the state of the prior decree alone has jurisdiction to modify its decree. This jurisdiction is exclusive. No other state has authority to hear a petition for modification.

Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA*, 14 Fam.L.Q. 203, 216–217 (1981).

States that have been called upon to address the concurrent jurisdiction issue have agreed with the analysis of Professor Bodenheimer that the theory of concurrent jurisdiction in a modification case is incompatible with the Act. *See, Harris v. Melnick*, 552 A.2d at 43. In *Kumar v. Superior Court of Santa Clara Cty.*, Cal. Supr.Ct., 32 Cal.3d 689, 186 Cal.Rptr. 772, 778, 652 P.2d 1003, 1009 (1982), California's high court, in deciding a case similar to the one at bar, stated:

*Initial* jurisdiction is determined by the guidelines of section 5152 [§ 3 UCCJA], which point to the closest connections to the child and to information about his present and future well-being. *Modification* jurisdiction is perhaps best viewed as an extension of the recognition and enforcement provisions of the Uniform Act. (§ 5152; Bodenheimer, 65 Cal.L.Rev. 978, 983–984.) California is not effectively enforcing the New York

decree if it modifies the decree as soon as the child has spent six months within its borders. Under section 5163 [§ 14 UCCJA], the strong presumption is that the decree state will continue to have modification jurisdiction until it loses all or almost all connections with the child.

For this Court to adopt the theory of concurrent jurisdiction with a sister jurisdiction in cases of custody modification would do violence to the intent of the Act.

I am satisfied that the great weight of legal authority recognizes a clear distinction between the jurisdictional requirements necessary for an initial order and the requirements for a second state to properly modify a decree of the first state. It is not disputed that Delaware entered the initial order in this case and it is that order which father now seeks to enforce here and mother wishes to modify in Wisconsin. I find nothing in the UCCJA or the PKPA which suggests this Court and the courts of Wisconsin share concurrent jurisdiction of the subject matter of this case.

IV

Although mother's argument that the doctrine of *forum non conveniens* requires this Court to decline jurisdiction in favor of Wisconsin is premised on the misplaced belief that the states share concurrent jurisdiction, I will address the application of the doctrine of *forum non conveniens*. However, the applicability of the doctrine of *forum non conveniens* will be analyzed from the position of Delaware having continuing jurisdiction and whether the doctrine requires the Court to decline to continue to exercise jurisdiction. *See,* § 7, UCCJA (codified as § 1907). While § 7 is applicable to determining jurisdiction in initial and modification cases, courts have given the initial decree state a strong presumption of continuing modification jurisdiction until almost all connections with the child are lost by the non-custodial parent. *See, Harris v. Melnick*, 552 A.2d at 45; *Kumar v. Superior Court of Santa Clara Cty.*, 186 Cal.Rptr. at 778, 652 P.2d

at 1009; *Neger v. Neger*, 93 N.J. 15, 459 A.2d 628 at 635–636 (1983).

The rationale for this strong presumption of continuing jurisdiction of the first state is set forth in subparagraphs 6 and 7 which state that the Act seeks to "[a]void the relitigation of custody decisions of other states in this State insofar as it is feasible" and "[f]acilitate the enforcement of custody decrees of other states." 13 *Del.C.* § 1901(a)(6) & (7), UCCJA.

■ Mother's arguments in support of transferring jurisdiction are that 1) Wisconsin is now the children's home state with its attendant available information concerning the children's present and future care, training and personal relationships, and 2) the execution of the April 7, 1989 order permitting mother to take the children to Wisconsin divested this Court of continuing jurisdiction. If the Court were to accept mother's first argument, then it is difficult to imagine an instance where the home state of the children would not automatically become the jurisdiction in which the issue of modification was not decided. Additionally, if this proposition were accepted, then as previously stated above, § 14 would become a nullity. Section 7, if the purposes of § 1 are to be observed, requires a greater showing than simply the acquisition of a new home state before jurisdiction is transferred.

■ Mother's second argument suggests that the parties, by execution of the April 7, 1987 order, intended to divest this Court of continuing jurisdiction. In reviewing the order, I find nothing on its face to suggest such intent by the parties.[3]

■ The actions of the parties also indicate no such intent existed because father filed one contempt action in this Court in February, 1990, and the only defense raised to this Court's jurisdiction was that Wisconsin was then the children's home state. It is well settled that parties cannot confer subject matter jurisdiction on a court by agreement. *Bruno v. Western*

*Pacific R.R. Co.*, Del.Ch., 498 A.2d 171 at 172 (1985) aff'd, Del.Supr., 508 A.2d 72 (1986). *See, also, State in Interest of D.S.K.*, 792 P.2d at 126. It logically follows if the parties cannot vest subject matter jurisdiction in the court of Wisconsin, they cannot divest Delaware courts of properly obtained subject matter jurisdiction. Based on the record before the Court, mother has failed to show sufficient grounds for this Court to decline continuing jurisdiction under the doctrine of *forum non conveniens*. Moreover, while the parties have not drawn a distinction between the jurisdiction of this Court to enforce its own order by a contempt proceeding and its jurisdiction to modify an order, Wisconsin has addressed that issue. *In Re the Paternity of J.L.V.*, App., 145 Wis.2d 308, 426 N.W.2d 112 (1988). The Wisconsin case is strikingly similar to the case at bar. In that case, the Circuit Court had entered valid orders of custody. Father later moved to Texas with the parties' child cutting off all contact between the child and mother. Mother filed motions for contempt and expanded visitation. Father first argued that "the purpose of the Act is to assure that litigation concerning custody of a child takes place in the state with which the child and family have the closest connection." *Id.* 426 N.W.2d at 113. The court dismissed this argument by holding that the proceeding was one in contempt, not custody determination or modification, and that courts have inherent power to hold in contempt those who disobey an order of the court. *Id.* (Citation omitted.) Father next argued that Wisconsin was an inconvenient forum. While the Wisconsin court concluded Texas was the child's home state, it was uncertain whether Texas had a closer connection to the child. The Wisconsin court, as I have concluded here, found the record was unclear whether substantial evidence such as the child's present and future upbringing was more readily available in Texas. Additionally, since the action was a contempt proceeding, it appeared Wisconsin was no less an appropri-

---

3. The order states in pertinent part:
    5) By signing this agreement father acknowledges and approves of mothers [sic]
    move to Wisconsin.

ate forum to decide the issue. The Wisconsin court also found that since father had moved with mother's consent under the state's removal statute, the court had a duty to ensure that the purpose of that statute in sustaining "a relationship between the child and the noncustodial parent by protecting reasonable visitation rights" was enforced. *Id.* at 114. The court found that no provisions of the Act had been violated. *Id.* Lastly, in cutting to the heart of the issue, the court concluded that the doctrine of *forum non conveniens* under the UCCJA was not applicable to contempt proceedings. *Id.*

## V

Mother next contends that for this Court to continue to exercise jurisdiction would contravene the purpose and intent of the UCCJA. This argument, as mother tacitly concedes, is a rehash of the jurisdictional and *forum non conveniens* arguments. Those issues have been addressed and it is not necessary to restate the court's position.

■ It is clear by the language of the UCCJA and the PKPA that the state which enters the initial decree has continuing jurisdiction as long as the child or one parent resides in the first state. Accordingly, the motion to dismiss is DENIED.