**Charles W. ZOOK,\* Petitioner,**

v.

**Deirdre P. DAVIS,\* Respondent.**

Family Court of Delaware,
New Castle County.

Submitted: Dec. 16, 1992.
Decided: Dec. 22, 1992.

Michael K. Newell, Wilmington, for petitioner.

Aida Waserstein, Wilmington, for respondent.

CONNER, Judge.

The above parties are before the Court on the petition of Charles Zook to modify the contact/visitation portion of this Court's Order of June 1, 1990 in regards to his contact or visitation with his children David Zook, born December 29, 1987, and Mary Zook, born December 9, 1989, to Deirdre Davis and himself. Deirdre Davis has entered a special appearance to contest this Court's jurisdiction and has filed a Motion to Dismiss for lack of jurisdiction or alternatively on the grounds of Forum non conveniens in that the Court of Burlington County, New Jersey would be a more convenient forum to try this modification of visitation issue. Ms. Davis has asked the Court to decline jurisdiction on either basis.

The history of the proceedings in this case starts with Ms. Davis's petition for custody of David filed on August 18, 1989. On October 16, 1989, the parties entered into a consent agreement, signed by Judge Keil, establishing joint legal custody, primary residence with Ms. Davis and every other weekend visitation with Mr. Zook. At the time of this first proceeding which followed their separation, Ms. Davis was pregnant with Mary, who was born December 9, 1989. In this same time period, Mr. Zook petitioned for divorce on September 14, 1989. In one of his prayers, he requested custody. Ms. Davis filed an Answer to the divorce petition on October 10, 1989 and also requested custody of David and her to be born child. These divorce pleading custody requests were resolved by a second consent Order of Judge Keil, entered pursuant to the parties' agreement on March 15, 1990. Basically, the joint custody, primary residence, and every other weekend contact schedule of the October 16, 1989 Or-

---

\* Pseudonyms utilized to protect the anonymity of the parties.

der were reaffirmed, but Mary was included. On May 1, 1990, Mr. Zook petitioned in this Court to increase the visitation. A third consent Order dated June 1, 1990 was entered by Master Kenney embodying an agreement of the parties. That Order is presently in effect and provides:

Father shall have visitation every other weekend from 6:00 p.m. Thursday until Sunday at 11:00 a.m. with David. On these weekends, Mother will bring Mary to father's house at 7:00 p.m. Saturday. Father will return both children on Sunday at 11:00 a.m. After Mary stops breast feeding both children will be with dad every other weekend, Thursday 6:00 p.m. til Sunday 7:00 p.m.

Father will have visitation with both children at New Jersey from 6:00 p.m. until 7:30 or 8:00 p.m. on Wednesday. On those days, David will spend the night at his father's, and will return home Thursday night at 7:00 p.m. After Mary stops breast feeding the Wednesday 6:00 p.m. to Thursday 7:00 p.m. shall apply to both children.

Holidays:

Mother will have the children Christmas Eve and Day until 1:00 p.m. and father will return the child or children at 1:00 p.m. the following day.

Parties will alternate the 4th of July.

Easter Day will be spent with Mother. If Easter falls on dad's weekend, he shall return the child or children by 7:00 p.m. on Saturday.

Halloween will be spent with father.

Thanksgiving Day will be spent with father. If it is his weekend, he will pick the child or children up at 11:00 a.m. on Thursday, and if it is not his weekend, he will return them on Friday at 12:00 p.m.

Holiday schedule and two weeks vacation with father will not apply to the baby until 1991.

Parties have refrained from making any decision concerning scheduling once each child is ready for school.

Non-consecutive two vacation weeks during summer, with at least one months notice for each party.

Ms. Davis testified that she did not raise the issue of this Court's possible lack of jurisdiction in June of 1990 due to the fact that a baby-sitter for the children still lived in Delaware and that she believed the visitation to be a part of the overall divorce process which was still ongoing.

Mr. Zook filed his current petition, the fourth on this issue, on August 11, 1992. In this petition, he seeks to have his visitation during the summer increased to every other week and also requests that Ms. Davis be required to share in the transportation. Pursuant to the June 1, 1990 Order, he has regularly been visiting with the children every other weekend, every other Wednesday, various holidays, but only two weeks during the summer. There is no dispute about any of the above events. It is also undisputed that Ms. Davis moved from Delaware to Marlton, New Jersey in September of 1989 and has resided there with David since that time. Mary has lived in Marlton since her birth on December 9, 1989.

■■■ In defense of the Motion to Dismiss, Mr. Newell argues that Delaware has jurisdiction to consider the legal issue of the visitation of these children with their father under 13 *Del.C.* § 1908(2)a, the Uniform Child Custody Jurisdiction Act (UCCJA), in that Mr. Zook has continuously resided in Delaware and the children have a significant connection with this State in the form of regular visitation across the river to Delaware every other weekend and every other Wednesday. He argues alternatively that the Parental Kidnapping Prevention Act (PKPA), a Federal Act found at 28 U.S.C.A. § 1738A(d) has supremacy over the Delaware Uniform Child Custody Jurisdiction Act and requires that Delaware continue to accept jurisdiction over this case. That statute provides as follows:

(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or any contestant.

\*     \*     \*     \*     \*     \*

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State;

The Court reads subsection (d) Section 1738A of the PKPA as conjunctive by requiring both that Delaware remain the residence of one contestant and that section (1) of subsection (c)(1) of § 1738A of the PKPA also be satisfied. Subsection (c)(1) of the PKPA requires that Delaware have jurisdiction under State law. Thus, the Court must return to the question of whether Delaware has jurisdiction under subsection (2)(a) of 13 *Del.C.* § 1903. That statute provides as follows:

(2) It is in the best interests of the child that a court of this State assume jurisdiction because:

(a) The child and his parents, or the child and at least 1 contestant, have a significant connection with this State.

These statutes read together require this Court to answer one question of whether these children have a significant connection with the State of Delaware at the present time? It is clear that Mr. Zook does. He lives here. The Court finds that the children also have such a significant connection. Since the Mother moved to New Jersey in 1989, they have regularly visited their father in Delaware every other weekend and every other Wednesday, plus two weeks each summer. They spend a substantial and significant amount of time in Delaware. I compare this factual situation with that of *Los v. Los,* Del.Supr., 608 A.2d 728 (1992), where the children had visited their father only for a two week period during one summer out of the two years, after they moved from Delaware. In that case, *Los, supra,* there was not a significant connection.

Having found subject matter jurisdiction under 13 *Del.C.* § 1903(2)(a), it is next necessary to determine whether to exercise this jurisdiction as the most convenient forum. Considering this question, the Court must review the guidelines found at 13 *Del.C.* § 1907, which provides as follows:

(c) In determining if it is an inconvenient forum, the court shall consider whether or not it is in the best interests of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

(1) If another state is or recently was the child's home state;

(2) If another state has a closer connection with the child and his family or with the child and 1 or more of the contestants;

(3) If substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state;

(4) If the parties have agreed on another forum which is no less appropriate; and

(5) If the exercise of jurisdiction by a court of this State would contravene any of the purposes stated in § 1901 of this title.

Reviewing each of the above standards separately in light of the evidence in this case, the first to be considered is: (1) "If another state is or recently was the child's home state." Clearly, New Jersey is and has been the home state for both these children since the fall of 1989, a period of over three years.

The second factor is whether New Jersey has a closer connection with the child and his family or with the child and 1 or more of the contestants. New Jersey definitely has a closer connection than does Delaware with these children in terms that they receive their child care and medical treatment in that state. When this petition is tried on the merits, one issue that must be determined is whether Mr. Zook should have the children for half the summer in light of his position on administering prescribed medication to David for an asthmatic condition. Obviously, medical testimony will be needed by whatever Court tries this issue and David's pediatrician is from New Jersey.

The third factor shows that substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in New Jersey. Again, due to the presence of the children's pediatrician and child care providers in New Jersey, the Court can only find that important evidence from those persons in the best positions to know is present

concerning the children's protection and care in New Jersey.

Factor (4), whether the parties have agreed on another forum which is no less appropriate, is not applicable.

Finally, factor (5) requires this Court to determine whether retaining jurisdiction would contravene any of the purposes stated in § 1901 which provides as follows:

(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on the well-being of such children;

(2) Promote cooperation with the courts of other states to the end that a custody decree will be rendered in that state which can best decide the case in the interest of the child;

(3) Assure that litigation concerning the custody of the child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available, and that the courts of this State decline the exercise of jurisdiction when the child and his family have a closer connection with another state which has enacted the Uniform Child Custody Jurisdiction Act;

(4) Discourage continuing controversies over child custody in the interests of greater stability of home environment and of secure family relationships for the child;

(5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(6) Avoid the relitigation of custody decisions of other states in this State insofar as it is feasible;

(7) Facilitate the enforcement of custody decrees of other states;

(8) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this State and those of other states concerned with the same child; and

(9) Make uniform the law of those states which enact child custody jurisdiction legislation.

In this final analysis, the Court is particularly impressed by guidelines (3) and (7) of § 1901. The most significant evidence concerning David's care and protection is more readily available in New Jersey and should Ms. Davis choose to ignore a Delaware Court Order it would be necessary to register that Court Order in New Jersey and seek enforcement there. Thus, factor (5) of 13 *Del.C.* § 1907 also favors this issue being litigated in New Jersey.

In summary, while the Court concludes that it could retain jurisdiction under 13 *Del.C.* § 1903(2) to consider the issue of Mr. Zook's visitation with his children, it must decline to exercise that jurisdiction under the statutory doctrine of Forum non conveniens. Simply stated, the Courts of New Jersey are the most convenient forum in which to litigate the extent and conditions of Mr. Zook's visitation with his children.

The Motion to Dismiss is granted.

IT IS SO ORDERED.