Karen BUTLER,[1] Respondent–
Below, Appellant,

v.

Thomas GRANT, Petitioner–
Below, Appellee.

No. 313, 1997.

Supreme Court of Delaware.

Submitted: May 26, 1998.
Decided: July 29, 1998.

Francine R. Solomon, Wilmington, for Appellant.

1. Pursuant to Supreme Court Rule 7(c), the names of the parties in the caption are pseudo- nyms selected by this Court.

Thomas Grant, Smyrna, pro se.

David H. Williams (argued), Paul P. Rooney, Morris, James, Hitchens & Williams, Wilmington, Amici Curiae.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ., constituting the Court en Banc.

HARTNETT, Justice.

In this appeal we consider whether the Family Court, pursuant to the Uniform Child Custody Jurisdiction Act,[2] has continuing subject matter jurisdiction over the custody of a minor child, although the child and her mother have left Delaware.

Respondent–Below, Appellant, the Mother, contends that the Delaware Family Court no longer has continuing jurisdiction to consider the custody of her minor child because she and the child have made Connecticut their home state for almost three years and have registered in Connecticut the Delaware Family Court's 1995 Modification of Custody Decree. Alternatively, Mother contends that the Family Court should have deferred its jurisdiction to Connecticut as the more convenient forum.

Because the Petitioner–Below, Appellee, the Father, continues to reside in Delaware and continues to exercise his right of visitation with his child in Delaware, we hold that the Delaware Family Court has exclusive continuing jurisdiction over the parties and the proceedings under the Uniform Act. Additionally, we find that the Family Court's ruling that Delaware was not an inconvenient forum for the parties to adjudicate the issue of visitation was proper. We, therefore, **AFFIRM** the Family Court.

### Nature of the Proceedings

The procedural facts are not in dispute. They, unfortunately, illustrate how a simple issue of custody and visitation as to the minor child of the parties can be made unduly complex. Upon their divorce in 1991, Father and Mother agreed to joint custody of the child, whereby the Mother would be the primary residential parent and the Father

would have visitation rights. The Family Court approved this arrangement and entered an initial custody and visitation order by stipulation on December 14, 1992.

In April 1994 Mother remarried and in December of 1994 she filed an emergency request in the Delaware Family Court to modify the initial custody decree to permit her to remove the child to Connecticut. She additionally sought sole custody of the child. Father, in response, also requested sole custody contending that residential placement in Delaware would be in the child's best interest. On June 24, 1994, after a hearing on the parties' cross-motions for modification of the original custody order, the Family Court issued a temporary order which continued the parties' joint custody arrangement, but permitted the child to be relocated to Connecticut. The primary physical placement of the child remained with the Mother, and Father was granted liberal visitation rights. This arrangement became permanent on March 24, 1995 when the Family Court, on review of its temporary order, entered an order continuing the previous custody and visitation arrangement (the Delaware Modification Decree).

On January 12, 1996, Mother registered the Delaware Modification Decree in the Connecticut Superior Court. Shortly thereafter Mother petitioned the Delaware Family Court to dismiss the Delaware proceedings for lack of subject-matter jurisdiction on the grounds that Mother and Child had been residing in Connecticut since June, 1994, and the Delaware Modification Decree was now registered in Connecticut. A hearing was scheduled in Delaware on this petition, along with other pending petitions between the parties, but both Mother and her Delaware counsel failed to appear. The Family Court, therefore, did not consider the merits of the petition.

In October, 1996, Mother's Connecticut counsel wrote to the Delaware Family Court requesting that the court's file be transferred to Connecticut stating that Connecticut had become the home state of the proceedings between the parties. In response, the Fami-

---

**2.** 13 Del. C., Chapter 19.

ly Court stated that no decision had been made to defer to the Connecticut Court. Mother's Connecticut counsel then wrote a letter to the Connecticut Court asking it to direct the Delaware Family Court to transfer the case file to Connecticut. On November 6, 1996, the Connecticut Superior Court issued an order accepting jurisdiction of the case, and subsequently wrote to the Delaware Family Court requesting the case file. Within a week, Mother petitioned the Connecticut Court to modify the visitation provision of the Delaware Modification Decree. After receiving notice of the hearing in the Connecticut Court, Father entered his appearance in that court, allegedly to prevent a default judgment. The parties then proceeded to a mediation conference, where both parties agreed to modify the visitation provisions of the Delaware Modification Decree. On December 18, 1996, the Connecticut court entered a decree approving the agreement (Connecticut Modification Decree) and forwarded a copy of it to the Delaware Family Court. In response, the Delaware Family Court, in a January 12, 1997 letter, made it clear that it had declined to defer its continuing jurisdiction over the matter to the State of Connecticut and, without any application pending in Delaware, declined to make a more substantive ruling on the jurisdictional issue.

On February 10, 1997, Mother filed a motion for contempt in Connecticut seeking to enforce the 1996 Connecticut Modification Decree. A hearing was scheduled for March 11, 1997. Father immediately moved in the Connecticut Court to dismiss the proceeding for lack of subject matter jurisdiction. On March 14, 1997, the Connecticut Court formally requested the Delaware Family Court to defer jurisdiction to Connecticut and outlined the parties connections to both Delaware and Connecticut.

Meanwhile in Delaware, on February 24, 1997, Father filed an emergency petition seeking a ruling that Delaware had continuing and exclusive jurisdiction over the custody and visitation proceedings. The Family Court summarily dismissed the petition on February 27, 1997. On March 10, Father filed a rule to show cause motion seeking to enforce the 1995 Delaware Modification Decree. As a result, the Family Court, recognizing that two modification decrees existed, one in Delaware and one in Connecticut, *sua sponte* reopened the petition for a ruling on jurisdiction and, after responses and briefing from both parties, on July 2, 1997 ruled that it retained continuing jurisdiction and declined to defer its jurisdiction to Connecticut.[3] Mother now appeals that Order.

Father filed an answer *pro se* in this appeal. On November 25, 1997, this Court appointed David H. Williams, Esquire, and Paul P. Rooney, Esquire, *amici curiae*, who also filed a brief in this matter. This Court gratefully acknowledges the pro bono participation of the *amici*. Their service is in the highest tradition of the Delaware Bar.

### Delaware Family Court's Jurisdiction

Mother first contends that Father should be estopped from raising the issue of whether the Delaware Family Court has continuing jurisdiction over the matter because he voluntarily appeared in the Connecticut action and agreed to modify the Delaware Modification Decree. It is, however, well-established Delaware law that parties cannot confer subject matter jurisdiction upon a

---

**3.** In its ruling the Family Court noted the rather unusual fashion this case was presented to it and pointed out that the better procedure would have been for the Mother to have petitioned the Delaware Family Court to relinquish jurisdiction to Connecticut. Because two modification decrees currently exist, the issue of whether Connecticut or Delaware has jurisdiction is paramount to the Family Court resolving this case and ruling on the contempt motion. If Delaware has jurisdiction, the Connecticut modification order would be invalid and the Delaware Family Court, not having lost jurisdiction nor declined jurisdiction, would be able to enforce its March 24, 1995

Modification Decree upon the parties. Such a holding, however, would not foreclose Mother from petitioning the Family Court to modify its March 24, 1995 Modification Decree to embrace the parties previously agreed modifications entered in Connecticut. Because the jurisdictional issue presented to us is dispositive of the Family Court's ability to enforce its March 24, 1995 Modification Decree, an opinion by this Court is not advisory. *Stearn v. Koch,* Del.Supr., 628 A.2d 44, 46 (1993); *See Stroud v. Milliken Enterprises,* Del.Supr., 552 A.2d 476, 479 (1989); *Mitchell v. Board of Adjustment,* Del.Supr., 706 A.2d 1027, 1030 (1998) (citations omitted).

court.[4] We, therefore, find Mother's argument to be without merit.

Mother next contends that Delaware no longer has continuing jurisdiction over the parties because the Delaware Modification Decree was registered in Connecticut and Connecticut is now the "home state" of the child and the mother. Further, she argues that all the information necessary to determine whether to modify the Delaware Modification Decree is before the Court in Connecticut. This argument raises the issue of whether the Delaware Family Court properly interpreted the Uniform Act when it determined that it had continuing subject matter jurisdiction, an issue of law which this Court reviews *de novo*.[5]

In order to determine whether the Family Court has continuing jurisdiction over the parties and jurisdiction to enforce its Delaware Modification Decree, we must consider the interplay between several provisions of the Uniform Act, and its general purposes.[6] We must also consider the Federal Parental Kidnapping Prevention Act.[7]

The general purposes of the Uniform Act are outlined in Section 1(a) of the Act:[8]

(a) The General purposes of this Act [Chapter] are to:

(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on the well being of such children;

(2) Promote cooperation with the courts of other states to the end that a custody decree will be rendered in that state which can best decide the case in the interest of the child;

(3) Assure that litigation concerning the custody of the child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available, and that the courts of this State decline the exercise of jurisdiction when the child and his family have a closer connection with another state which has enacted the Uniform Child Custody Jurisdiction Act;

(4) Discourage continuing controversies over child custody in the interests of greater stability of home environment and of secure family relationships for the child;

(5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(6) Avoid the relitigation of custody decisions of other states in this State insofar as it is feasible;

(7) Facilitate the enforcement of custody decrees of other states;

(8) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this State and those of other states concerned with the same child; and

(9) Make uniform the law of those states which enact child custody jurisdiction legislation.

While the Uniform Act specifically addresses a court's initial jurisdiction in Section 3[9] and a court's ability to modify another court's decree in Section 14,[10] it does not specifically address the issue of competing

---

**4.** *El Paso Natural Gas Co. v. Transamerican Natural Gas Corp.*, Del.Supr., 669 A.2d 36, 39 (1995) (quoting *Timmons v. Cropper*, Del. Ch., 172 A.2d 757, 760 (1961)); *Bruno v. Western Pacific R.R. Co.*, Del. Ch., 498 A.2d 171, 172 (1985) (citations omitted), *aff'd*, Del.Supr., 508 A.2d 72 (1986); *Shockley*, Del.Fam., 611 A.2d at 514 (citing *Bruno); see also Sadloski v. Town of Manchester*, 228 Conn. 79, 634 A.2d 888, 891 (1993) (citation omitted).

**5.** *Yost v. Johnson*, Del.Supr., 591 A.2d 178, 181 (1991) (citations omitted); *State in Interest of D.S.K.*, 792 P.2d at 123 (citation omitted).

**6.** The Uniform Act has now been adopted by every state and the District of Columbia. Annotation, 83 A.L.R.4th 742, 748 § 2[a] (1991) (citation omitted).

**7.** 28 U.S.C.A. § 1738A.

**8.** 13 Del. C. § 1901.

**9.** 13 Del. C. § 1903.

**10.** 13 Del. C. § 1914.

claims of jurisdiction in two or more courts.[11]

Recognizing this gap in the Uniform Act, in 1980 Congress passed the Parental Kidnapping Prevention Act ("Federal Act"),[12] "in an attempt to eliminate some of the legal and pragmatic difficulties arising from interstate child kidnapping, and to address the recognition problems sometimes existing under the Uniform Child Custody Jurisdiction Act when more than one court sought to assert jurisdiction over a custody issue."[13] The Federal Act's jurisdictional provisions, which are codified at 28 U.S.C. § 1738A, supersede any inconsistent state laws under the supremacy clause of the Constitution.[14] Section (d) of the Federal Act specifically addresses the issue of continuing jurisdiction and states:

(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.[15]

Subsection (c)(1) provides:

A child custody determination made by a court of a State is consistent with the provisions of this section only if——

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

\*  \*  \*  \*  \*  \*

(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.[16]

Section 14 of the Uniform Child Custody Jurisdiction Act,[17] even without the Federal Act, makes it clear that the Delaware Family Court has continuing jurisdiction in this matter. It, therefore, precludes Connecticut, which also has adopted the Uniform Act, from modifying the Delaware Modification Decree because:

(a) If a court of another state [Delaware] has made a custody decree, a court of this state [Connecticut] shall not modify that decree unless:

(1) It appears to the court of this State, [Connecticut], that the court which rendered the decree, [Delaware], does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter, or has declined to assume jurisdiction to modify the decree; and

(2) The court of this State [Connecticut] has jurisdiction.[18]

Professor Bodenheimer, the reporter for the drafting committee of the Uniform Act has written extensively on jurisdictional issues under the Uniform Act and has concluded that:

[T]he continuing jurisdiction of the prior court is exclusive. Other states do not have jurisdiction to modify the decree. They must respect and defer to the prior state's continuing jurisdiction. Section 14 is the key provision which carries out the Act's two objectives of (1) preventing the harm done to children by shifting them from state to state to relitigate custody, and (2) preventing jurisdictional conflict between the states after a custody decree has been rendered. . . .

Exclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence

---

11. Annotation, 83 A.L.R.4th 742, 748 § 2[a] (1991).

12. 28 U.S.C. § 1738A.

13. Annotation, 83 A.L.R.4th 742, 748 § 2[a] (1991).

14. *Yurgel v. Yurgel*, Fla.Supr., 572 So.2d 1327, 1329 (1990) (citing *Thompson v. Thompson*, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988)).

15. 28 U.S.C. § 1738A(d).

16. 28 U.S.C. § 1738(A)(c)(1).

17. 13 Del. C. § 1914.

18. 13 Del. C. § 1914; Conn. General Statutes § 46b-104.

exists and where one parent or another contestant continues to reside. *Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required.*[19]

Further, Professor Bodenheimer has dispelled any argument that concurrent jurisdiction can exist, concluding that the concept of concurrent jurisdiction is "incompatible with the clear language of the Uniform Act."[20] Specifically, she points to the provision in Section 14, of the Uniform Act that provides that a state which rendered a decree has continuing exclusive jurisdiction because "other states do not have jurisdiction to modify the decree unless the original state has lost its jurisdiction."[21]

The majority of courts that have considered the issue of continuing jurisdiction have followed Professor Bodenheimer's reading of the Uniform Child Custody Jurisdiction Act and have held that "the state in which the initial decree was entered has exclusive continuing jurisdiction to modify the initial decree if: (1) one of the parents continues to reside in the decree state; and (2) the child continues to have some connection with the decree state, such as visitation."[22]

This Court in *Trader v. Darrow*[23] followed the majority rule and found that the Delaware Family Court did not have jurisdiction to modify a Maryland consent order granting father custody of the parties' daughter when the father continued to reside in Maryland, and the Maryland court had not conceded its continuing jurisdiction to Delaware.[24]

In the case of *In the Interest of Shockley*, the Family Court of Delaware confronted the same issue now before this Court.[25] In that case, mother and child had relocated to Wisconsin for over six months when mother filed a petition in Wisconsin to modify the Delaware custody order.[26] The Wisconsin court then entered an order prohibiting the father's visitation rights.[27] Once the Wisconsin court learned of the Delaware Family Court's concern over the matter, the Wisconsin court held its order in abeyance pending action in Delaware.[28] Father filed a contempt petition and the Delaware Family Court, in the interest of judicial economy, ruled on the jurisdictional issue, holding that it retained jurisdiction to modify its decree because the father continued to reside in Delaware .[29] In its opinion, the *Shockley* court highlighted the distinction between initial and modification jurisdiction by citing the California Supreme Court:

> *Initial* jurisdiction is determined by the guidelines of section 5152 [§ 3 UCCJA, § 1903 in Delaware], which point to the closest connections to the child and to information about his present and future well-being. *Modification* jurisdiction is perhaps best viewed as an extension of the recognition and enforcement provisions of the Uniform Act. (§ 5152; Bodenheimer, 65 Cal.L.Rev. 978, 983–984.) California is not effectively enforcing the New York decree if it modifies the decree as soon as the child has spent six months within its borders. Under section 5163 [§ 14 UCCJA, § 1914 in Delaware], the strong presumption is that the decree state will con-

---

**19.** *Trader*, 630 A.2d at 637 (citing *State in Interest of D.S.K.*, Utah App., 792 P.2d 118, 124 (1990)) (quoting Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA*, 14 Fam.L.Q. 203, 214–15 (1981), *quoted in Kumar v. Superior Court*, 32 Cal.3d 689, 186 Cal.Rptr. 772, 652 P.2d 1003, 1007 (1982) (emphasis in original)).

**20.** Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA*, 14 Fam.L.Q. 203, 216–17 (1981).

**21.** Id. at 214–15.

**22.** *In re Marriage of Greenlaw v. Smith*, 123 Wash.2d 593, 869 P.2d 1024, 1031 (1994), *cert. denied*, 513 U.S. 935, 115 S.Ct. 333, 130 L.Ed.2d 291 (1994), *reh'g denied*, 513 U.S. 1066, 115 S.Ct. 686, 130 L.Ed.2d 617 (1994)(collecting cases).

**23.** Del.Supr., 630 A.2d 634 (1993).

**24.** *Id.* at 636.

**25.** *In the Interest of Shockley*, Del.Fam., 611 A.2d 508 (1992).

**26.** *Id.* at 509.

**27.** *Id.*

**28.** *Id.*

**29.** *Id.* at 512.

tinue to have modification jurisdiction until it loses all or almost all connections with the child.[30]

■ Like a majority of courts, we find Professor Bodenheimer's reading of the Uniform Act and the Federal Parental Kidnapping Prevention Act persuasive. We, therefore, adopt the majority rule and hold that the Delaware Family Court has exclusive continuing jurisdiction over its 1995 Modification Decree as long as the child, one of the child's parents, or a person acting as the child's parent continues to reside in Delaware, and the child continues to have some contact with the State of Delaware, such as visitation in state.

■ In the present case it is undisputed that Delaware had jurisdiction over the child when it properly entered the initial custody/visitation order and the modifications to that order. As both the Family Court and the Connecticut Court noted, the child's father, maternal grandparents and several cousins continue to reside in Delaware. The child attends summer camp in Delaware each year and visits her father in Delaware each month and on certain holidays. We, therefore, find that the Family Court continues to have subject matter jurisdiction over the child for custody and visitation proceedings, to the exclusion of the State of Connecticut.[31]

**Forum Non Conveniens**

■ Mother next contends that the Family Court erred in declining to confer jurisdiction to Connecticut under Section 7 of the Uniform Act's *forum non conveniens* provision (13 Del. C. § 1907). The decision to decline to exercise jurisdiction under Section 1907 is within the Family Court's discre-

tion.[32] If this Court finds that there is sufficient evidence to support the findings of the Family Court and those findings are the product of an orderly and logical deductive process, then this Court in the exercise of judicial restraint, must accept them and affirm the decision of the Family Court.[33]

Pursuant to 13 Del. C. § 1907, (Section 7 of the Uniform Act), a court having jurisdiction may find that it is an inconvenient forum to litigate the matter and defer its jurisdiction to another state which is a more convenient venue for a custody determination.[34]

13 Del. C. § 1907 provides in part:

(a) A court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree, if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is more appropriate forum.

(b) A finding of forum non conveniens may be made upon the court's own motion or upon motion of a party or guardian ad litem or other representative of the child.

(c) In determining if it is an inconvenient forum, the court shall consider whether or not it is in the best interests of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

(1) If another state is or recently was the child's home state;

(2) If another state has a closer connection with the child and his family or

**30.** *Id.* at 513 (quoting *Kumar v. Superior Court,* 32 Cal.3d 689, 186 Cal.Rptr. 772, 652 P.2d 1003, 1009 (1982)).

**31.** To the extent our holding is inconsistent with the Family Court's ruling in *Zook v. Davis,* Del. Fam., 641 A.2d 849 (1992) that to make a determination of whether the Family Court has continuing jurisdiction, it must find that jurisdictional requirements of Section 1903 are satisfied, it is overruled. Our holding is, however, consistent with well-settled Delaware law that a "court [has] inherent and continuing jurisdiction to enforce their own order." *Lindh v. Randolph,* Del.

Supr., No. 310, 1986, Holland, J., 1987 WL 36087 (May 4, 1987) (ORDER) (citations omitted).

**32.** *Dennis v. Dennis,* N.D.Supr., 387 N.W.2d 234, 235 (1986) (citations omitted); *In re Marriage of Greenlaw v. Smith,* 123 Wash.2d 593, 869 P.2d 1024, 1034 (1994) (citations omitted).

**33.** *Levitt v. Bouvier,* Del.Supr., 287 A.2d 671, 673 (1972).

**34.** 13 Del. C. § 1907.

with the child and 1 or more of the contestants;

(3) If substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state;

(4) If the parties have agreed on another forum which is no less appropriate; and

(5) If the exercise of jurisdiction by a court of this State would contravene any of the purposes stated in § 1901 of this title.

(d) Before determining whether to decline or retain jurisdiction, the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.

(e) If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings or it may stay the proceedings upon the condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper, including the condition that a moving party stipulate his consent and submission to the jurisdiction of another forum.[35]

In applying this Section, the Delaware Family Court, after considering that Connecticut had been the child's "home state" for about three years, and that the child's primary medical care, schooling, and extracurricular activities all occurred in Connecticut, nevertheless found that it was in the child's best interest for the Delaware Family Court to continue to retain its jurisdiction. In its determination, the Family Court found, in part:

.... the minor child's ties with the State of Delaware remain significant. For the first five years of this eight-year old's life, she resided in Delaware. The natural father continues to live in Delaware. The minor child's maternal grandparents and several cousins also live in Delaware. It appears that the only blood relative the child has contact with in Connecticut is the natural mother. Furthermore, the child attends a Methodist church and a summer camp in Delaware during visitations. While these connections to Delaware are important, perhaps what is equally important and further justifies Delaware retaining jurisdiction, is the long history of the child custody/visitation proceedings in this case and the record of those proceedings in the Delaware Family Court.

Because we find the Family Court's decision to retain jurisdiction under 13 Del. C. § 1907 is based on an orderly and logically deductive process and supported in fact, we find no abuse of discretion.[36]

### Conclusion

The judgment of the Family Court, finding that it retains exclusive continuing subject matter jurisdiction over the custody and visitation rights of the child, and that Delaware is not an inconvenient forum to litigate, is **AFFIRMED.**

---

**35.** *Id.*

**36.** *Matthews v. Riley,* 162 Vt. 401, 649 A.2d 231, 241 (1994) (affirming trial court's finding that it was not an inconvenient forum when significant evidence regarding child's relationship with father and visitation could be found in Vermont and the order to be enforced was issued in Ver-

mont, despite child's residence for several years in Rhode Island); *Trent v. Trent,* Utah Supr., 735 P.2d 382, 383 (1987) (finding no abuse of discretion when children and mother resided in another state, the issue presented was one of visitation, and mother made no showing of prejudice).